UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE | ) |
| | ) Bankruptcy Case |
| JAMES A. WALMSLEY, | ) No. 12-61054-tmr13 |
| | ) |
| | ) MEMORANDUM OPINION |
| Debtor. | ) |

The present matters come before the Court on the United States' (through the Internal Revenue Service (**IRS**)) and Debtor's cross motions for summary judgment.

**Background**:

Debtor James Walmsley filed a Chapter 13 petition on March 19, 2012. He is currently operating under a modified plan dated August 17, 2012, which was confirmed on December 7, 2012.[1] After two amendments, IRS filed proof of claim #2-3. It indicated a $6,046 secured claim for 2002 income taxes, and a $76,748.33 general unsecured claim, representing the balance of 2002 income taxes, plus interest and penalties thereon, plus 2004 income taxes, plus interest and penalties thereon. Debtor objected to the claim,

---

[1] Debtor's confirmed plan treats IRS as secured for $6,046.00, to be paid at 3% interest at $111 per month, with the balance treated as general unsecured, to be paid approximately 0%. However, this treatment is contingent on IRS establishing an allowed claim, which is the subject of the instant dispute.

MEMORANDUM OPINION-1

alleging he had no tax liability for the years in question[2]. IRS requested a hearing. The Court held preliminary hearings on November 6, 2012, and February 19, 2013, after which it set a briefing schedule. The parties then filed the instant cross-motions for summary judgment, with accompanying supporting documents. They did not request oral argument.

Upon the Court's review of the cross-motions, it noted IRS had inadvertently filed a duplicate of the 2004 Certificate of Assessments instead of the 2002 Certificate as intended. It also noted a receipt adduced in support of Debtor's 2004 "repair" deduction, was illegible. By letter dated July 25, the Court invited IRS to substitute the 2002 Certificate, and Debtor to supply a more legible copy of the receipt. It gave the non-submitting party five days to respond. IRS submitted the 2002 Certificate. See Adam Strait Declaration (Doc. 90). Debtor did not submit a legible copy of the receipt, although he did file a tardy response to the 2002 Certificate. The cross-motions are now ripe for decision.

**Facts:**

Debtor operated a tree trimming service as a sole proprietor. He did not timely file income tax returns in 2002 and 2004. Through Form 1099s or otherwise, IRS was put on notice of income earned during those years. It later determined Debtor's tax liability by virtue of substitutes for returns, and sent out notices of deficiencies in September 2007. Debtor did not respond thereto. The IRS thus assessed taxes, interest, and penalties for both years.

For 2002, it assessed $28,879 in taxes, comprised of $11,141 in self-employment taxes and $17,738 in income taxes. The taxes were based on $78,850 in income from the tree trimming service (and included no deductions related to the business), $6,429 in taxable interest income, and $6,068 in taxable pension income, for $91,347 in total income. From that amount, half of the self-employment tax ($5,570.50) was deducted to obtain adjusted gross income of $85,776.50. From that, a $4,700 standard deduction and a

---

[2] Debtor claims that he did not need to file income tax returns for 2002 and 2004, because he did not have any tax liability for those years. As a matter of law, that position is incorrect. See 26 U.S.C. § 6012(a)(1)(A).

MEMORANDUM OPINION-2

$3,000 personal exemption were deducted, rendering $78,076.50 in taxable income upon which the income tax was computed. The self-employment tax was computed on the $78,850 in income from the business.

For 2004, IRS assessed $8,286 in taxes, comprised of $4,383 in self-employment taxes and $3,903 in income taxes. The taxes were based on $31,017 in income from the tree trimming service (and included no deductions related to the business), $1,487 in taxable interest income, and $6,068 in taxable pension income, for $38,572 in total income. From that amount, half of the self-employment tax ($2,191.50) was deducted to obtain adjusted gross income of $36,360.50. From that, a $4,850 standard deduction and a $3,100 personal exemption were deducted rendering $28,410.50 in taxable income upon which the income tax was computed. The self-employment tax was computed on the $31,017 in income from the business.

After he filed his Chapter 13 petition, Debtor signed original income tax returns for the 2002 and 2004 tax years on July 19, 2012, and filed them sometime thereafter. He declared the above amounts in income, and, for 2002, an additional $4,000 which appears to be gain from an installment sale. For both years he took many business deductions which resulted in net business losses of $12,930 for 2002, and $300 for 2004, and total claimed tax liability of $0 on Forms 1040 for both years. IRS did not accept these returns.

**Summary Judgment Standards:**

The objection to claim constitutes a "contested matter" controlled by FRBP 9014. That Rule specifically contemplates motions for summary judgment, as FRBP 9014(c) incorporates FRBP 7056, which in turn incorporates FRCP 56. On a motion for summary judgment, the moving party has the burden to establish the absence of a material issue of fact for trial. FRCP 56(a). The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Material facts are such facts as may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). No genuine factual issue exists for trial where a nonmoving party rests on mere allegations or denials, or shows "some metaphysical doubt." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). "A dispute about a material fact is genuine only 'if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'" FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).

With regard to its own claims or defenses (i.e., those elements for which the moving party bears the burden of proof at trial), the movant "must support its motion with credible evidence-using any of the materials specified in Rule 56(c)-that would entitle it to a directed verdict if not controverted at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 331, 106 S. Ct. 2548, 2557 (1986) (Brennan, J., dissenting). There must be more than a "scintilla," Anderson, 477 U.S. at 251, 106 S. Ct. at 2511 (internal quotation omitted), indeed the evidence must be "significantly probative." Id. at 249, 106 S. Ct. at 2511. If the movant makes the requisite affirmative showing, the burden of production shifts to the non-moving party to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial (i.e., significant probative evidence tending to support its claim or defense), Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quotation omitted), or to submit an affidavit requesting additional time for discovery. Celotex, 477 U.S. at 331, 106 S. Ct. at 2557 (Brennan, J., dissenting).

With regard to a motion for summary judgment attacking the opposing party's claims or defenses (i.e., those for which the nonmovant has the burden of proof at trial), and assuming sufficient time for discovery, the movant may discharge his Rule 56 burden in two ways. He may submit evidence affirmatively negating elements of the nonmoving party's claims or defenses (method one), or he may affirmatively demonstrate (other than by a conclusory statement) that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim (method two), id., as there is "no express or implied requirement . . . that the moving party support its motion with affidavits or other similar material negating the opponent's claim." Id. at 323, 106 S. Ct. at 2553 (majority op.). Once the moving party has met its burden of production under either method,[3] the directed verdict standard once again comes

---

[3] If the moving party attempts to use method two, the nonmoving party may also call the court's attention to evidence already in the record that the movant has overlooked or ignored. In that event, the moving party must respond by making an attempt to demonstrate the inadequacy of this evidence, for it is only by attacking the entire record allegedly supporting the nonmoving party that a moving party satisfies
(continued...)

MEMORANDUM OPINION-4

into play, as the burden shifts to the nonmoving party to produce evidence sufficient to sustain a jury verdict on those issues for which it bears the burden at trial. Rebel Oil Co., Inc. v. Atl. Richfield Co., 51 F.3d 1421, 1435 (9th Cir. 1995) (quotation omitted). Thus, "evidence of an essential element is sufficient to defeat summary judgment only if a jury reasonably could infer from that evidence the existence of that element." In re Gilliam, 2012 WL 1191854, *7 (9th Cir. BAP April 6, 2012). This again requires the nonmoving party to produce significant probative evidence. Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

A rebuttable presumption in favor of one party imposes on the other party the burden of production, i.e., the burden of going forward with evidence, but it does not alter the ultimate burden of persuasion. Devan v. CIT Group/Commercial Services, Inc. (In re Merry Go–Round Enters., Inc.), 229 B.R. 337, 341 (Bankr. D. Md. 1999) (citation omitted). The existence of a presumption alters a summary judgment movant's ability to meet its summary judgment burden of production because the presumption excuses the beneficiary from having to put forth evidence until the party against whom the presumption operates puts forth "evidence to rebut or meet the presumption." Id. (citation omitted).

All reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party, Crosswhite v. Jumpking, Inc., 411 F. Supp. 2d 1228, 1230 (D. Or. 2006), and all rational or reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631 (quotation omitted). "When different ultimate inferences can be reached, summary judgment is not appropriate." Simone v. Manning, 930 F. Supp. 1434, 1436 (D. Or. 1996). In deciding a motion for summary judgment, the court should neither make credibility determinations, nor weigh the evidence. Anderson, 477 U.S. at 255, 106 S. Ct. at 2513. For lay witnesses, conclusory, self-serving affidavits, lacking detailed facts and any supporting evidence are insufficient to create a genuine issue of material fact. FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1996). Therefore, such conclusory affidavits are insufficient to support a movant's burden on its own claims, Washington Physicians Serv. Ass'n. v. Gregoire, 147 F.3d 1039, 1048 (9th Cir. 1998), or even to show the

---

[3](...continued)
Rule 56's burden of production. Celotex, 477 U.S. at 332, 106 S. Ct. at 2557 (Brennan, J., dissenting).

MEMORANDUM OPINION-5

absence of a material issue of fact when the movant does not have the burden at trial. Celotex, 477 U.S. at 331-332, 106 S. Ct. at 2557 (1986) (Brennan, J., dissenting). Neither can such affidavits support a non-movant's summary judgment burden. United States v. Shumway, 199 F.3d 1093, 1104 (9th Cir. 1999).

**Discussion:**

The Court has jurisdiction to determine the taxes at issue.[4] Debtor concedes IRS' proof of claim is entitled to prima facie validity under FRBP 3001(f).[5] See Debtor's Memorandum in Support (Doc. 82) at p. 2. Because of its prima facie validity, the proof of claim, in and of itself, is sufficient to carry IRS' initial summary judgment burden on its own motion. In re Carpenter, 2006 WL 4528541, *5 (Bankr. D. Or. April 19, 2006). Likewise the adduced 2002 and 2004 Certificates of Assessments, Payments, and Other Specified Matters, establish a prima facie case, Neilson v. United States (In re Olshan), 356 F.3d 1078, 1084 (9th Cir. 2004) (IRS' deficiency determinations and assessments for unpaid taxes are presumed correct so long as they are supported by minimal foundational facts, thus shifting the burden to the taxpayer to adduce evidence rebutting the presumption), and are likewise sufficient to carry IRS' evidentiary burden on its own motion. United States v. Fetter, 1997 WL 433521, *3 (D. Or. June 24, 1997).

---

[4] 11 U.S.C. § 505(a)(1) provides:

> Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

Section 505(a)(2)(A) provides an exception if the amount or legality of the tax was contested before and adjudicated by a judicial or administrative tribunal before the case was filed. Here, Debtor did not contest the notices of deficiencies and no tribunal has adjudicated the amount of the taxes. Thus Debtor is not precluded from contesting them here. Cent. Valley AG Enters. v. United States, 531 F.3d 750, 755 (9th Cir. 2008). IRS has not argued otherwise.

[5] FRBP 3001(f) provides: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

MEMORANDUM OPINION-6

The disputes at bar mostly involve the validity of Debtor's claimed business deductions. Because the Debtor has the burden of proof at trial, United States v. Gen. Dynamics Corp., 481 U.S. 239, 245, 107 S. Ct. 1732, 1737 (1987) (taxpayer has burden of proof on deduction entitlement); Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 26, 120 S. Ct. 1951, 1958 (2000) (burden of proof in claims litigation remains where substantive law puts it), both in opposition to IRS' motion and in support of his cross motion, he must put forth significant probative evidence of the validity of his claimed deductions, (or seen another way, evidence that the Certificates of Assessment are arbitrary or erroneous, Fetter, 1997 WL 433521 at *3), such that a jury could find in his favor if the evidence was not refuted. In this regard, "the tax returns are not themselves proof of statements made therein."[6] Beam v. C.I.R., T.C. Memo 1990-304, 1990 WL 83346, at *__ (U.S. Tax. Ct. June 19, 1990), aff'd on other grounds, 956 F.2d 1166, 1992 WL 43552 (9th Cir. 1992) (unpublished) (text in Westlaw).

The other dispute is the accuracy of IRS' calculations in the 2002 and 2004 Certificates of Assessment. Because of the proof of claim's prima facie validity and the presumed validity of the Certificates, Debtor has the summary judgment burden to rebut these presumptions by significant probative evidence.

**Business Deductions**:

Under 26 U.S.C. § 162(a),[7] a taxpayer may deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. IRS has disallowed all of Debtor's claimed business deductions for 2002 and 2004. Both sides have moved for summary judgment as to same.

// // //

// // //

// // //

---

[6] Put another way, a taxpayer can't use his tax return (executed under oath) to prove the accuracy of his tax return.

[7] Unless otherwise noted, all subsequent statutory references are to Title 26 of the United States Code.

MEMORANDUM OPINION-7

**2002**:

Cost of Goods Sold:

Schedule C, Line A, lists the nature of Debtor's business as "Tree Trimming Service." Schedule C, Line 4, lists $59,000 for cost of goods sold. In Part III, Line 39, of the same Schedule, Debtor itemized the $59,000 as "[o]ther costs." However, he did not list any beginning or ending inventory, as required. He states in his Declaration that the $59,000 was "what I paid to Davey Tree Service whom I used as a subcontractor for the years 2002 and 2004. The numbers used for cost of goods sold for 2002 and 2004[8] came from notes I kept and regularly maintained in the course of my business during 2002 and 2004." This evidence does not meet Debtor's summary judgment burden.

> Cost of goods sold is subtracted from gross receipts to compute gross business income. It is not a deduction, and so isn't subject to the limits on deductions in section 162, but any amount claimed as cost of goods sold still has to be substantiated.

Azimzadeh v. C.I.R., T.C. Memo. 2013-169, 2013 WL 3811481, *5 (U.S. Tax Ct. 2013) (internal citations omitted). A taxpayer is required to keep sufficient records to establish the amount of gross income and deductions. 26 C.F.R. § 1.6001-1(a). In general, the cost of goods sold relates to those costs associated with the taxpayer's inventory. Azimzadeh, T.C. Memo 2013-169 at __, 2013 WL 3811481 at *5. Here, Debtor has adduced no records or any other evidence that he maintained an inventory of goods to sell as part of his main business. Rather the reasonable inference is Debtor operated a service business and that he subcontracted with Davey Tree Service to perform certain of those services. Further, even if Debtor maintained an inventory, there is no evidence Davey Tree Service contributed to producing the inventory. Based on the above, Debtor has not met his summary judgment burden as to cost of goods sold.

Even if the Court considered the $59,000 as a claimed business deduction for labor costs, Debtor's evidence does not create a material factual issue. Although he indicates the $59,000 figure came from notes he kept in the regular course of his business, he has not adduced the notes or any direct substantiation, such

---

[8] Debtor in fact did not list any "cost of goods sold" on his 2004 Schedule C.

MEMORANDUM OPINION-8

as invoices, receipts, cancelled checks, etc. He further has adduced no affidavit or declaration from Davey Tree Service. Even assuming such failure to substantiate does not require per se disallowance, Schacter v. C.I.R., 255 F.3d 1031, 1034 (9th Cir. 2001), the evidence used to meet one's burden on summary judgment cannot be conclusory. Debtor has adduced no information as to when and in what form he paid Davey Tree Service, or what, where, and when Davey Tree Service performed. Further, Debtor lists exactly $59,000 in expenses. That is implausible. When, in context, the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing Blue Ridge Ins. Co. v. Stanewich, 142 F.3d 1145, 1149 (9th Cir.1998)). Here, Debtor has not adduced "more persuasive evidence."[9]

Car and Truck Expenses:

On Schedule C, Line 10, Debtor claimed a deduction for $7,200 in car and truck expenses. He did not however fill out Part IV of the Schedule which requires information on the vehicle(s). He states in his Declaration that the fuel expense came from his 1999 Form 1040, and that he recalls those expenses were larger in 2002 and 2004 than in 1999. IRS' Exhibit 6, p. 1, is a letter from Debtor's counsel explaining that Exhibit 6, p. 6 (which is the same as Debtor's Exhibit 1), is a statement Debtor gave to IRS wherein he compared his 2002 and 2004 business deductions to those taken in 1997. Debtor's Declaration states his Exhibit 1 (which he declares is true and correct), contains the answers to the questions posed by IRS' agent who reviewed his 2002 and 2004 returns.

Debtor's Exhibit 1 is confusing and leads to speculation regarding what the information relates to. Debtor has not adduced the actual questions posed by IRS' auditor and his answers don't clearly identify the questions. Further, he has not adduced the 1997 return used in formulating the answers. This confusion in

---

[9] In fact, debtor states in his supporting memoranda that all documentation substantiating his claimed deductions has been submitted "in its entirety" by IRS. Debtor's Memorandum, [in Support (Doc. 82) at] p.1. This lack of evidence and corroborating documents makes it difficult for Debtor to prevail on his claimed deductions.

MEMORANDUM OPINION-9

and of itself means Exhibit 1 should be given little weight in the summary judgment analysis. The Court however has tried to parse it as best it can.

In Exhibit 1, Debtor advised his fuel expenses were "less" than in 1997. He explained the $1,261 figure is "low" but it is unclear what this figure relates to. He also advised the $9,743 figure was only for the F-350 truck, a tractor, and a chipper used part time. Again, he did not detail what year or precisely what expense the $9,743 related to. He advised he fueled three times per week at $50 average per fill-up over a 28 week period, which he computed at $4,200, all again without detailing the pertinent year. In 2002, he apparently only used his F-350 truck.[10] He stated he "averaged 35 miles per day x five days per week x 28 weeks over seven months-4900. There were multiple work locations inside and outside city limits where the power lines were[,] that required notification of customers and work supervision plus follow-up inspection."

Even giving Debtor all reasonable inferences, the above statements do not meet his summary judgment burden. It is unclear whether he is claiming car and truck expenses based on standardized mileage or actual expenditures.[11] Further, no matter if Debtor took actual or standardized expenses, they relate to his F-350 truck, a type of "listed property," and thus he must substantiate the expenses. § 274(d)(4).[12]

---

[10] In 2004, Debtor used a 1999 GMC Yukon (purchased March 8, 2003) when he wasn't using the F-350.

[11] The standard mileage rate for business use of a vehicle in 2002 was 36.5 cents/mile. Rev. Proc. 2001-54, § 2.01, and in 2004 was 37.5 cents/mile. Rev. Proc. 2003-76, § 2.01. If a taxpayer took the standard mileage expense, he could not also deduct the cost of items such as depreciation, maintenance and repairs, tires, gasoline, oil, insurance, and license and registration fees. Rev. Proc. 2001-54, § 5.03; Rev. Proc. 2003-76, § 5.03.

[12] "Listed property" for purposes of § 274(d)(4) is property defined in § 280F(d)(4), and includes passenger automobiles and any other property used as a means of transportation. § 280F(d)(4)(A)(i), (ii). "Passenger automobile" means any four-wheeled vehicle that is manufactured primarily for use on public streets, roads, and highways, and is rated at 6,000 pounds unloaded gross vehicle weight or less, or in the case of a truck or van, 6,000 pounds gross vehicle weight. § 280F(d)(5). Debtor has adduced no evidence the F-350 (and the Yukon purchased in 2003) were not "passenger automobiles."

"Listed property" does not include a "qualified nonpersonal use vehicle," § 274(d), defined as "any vehicle which, by reason of its nature, is not likely to be used more than a de minimis amount for personal
(continued...)

MEMORANDUM OPINION-10

Substantiation must be by "adequate records" <u>or</u> "sufficient evidence to corroborate the taxpayer's own statement" as to: 1) the amount of the expenditure; 2) the time and place of the use; 3) the business purpose of the expense; and, 4) the business relationship to the taxpayer of persons using the property. § 274(d). To satisfy the "adequate record" requirement, the taxpayer must maintain an account book, diary, log, statement of expense, trip sheets, or similar record, and documentary evidence, which in combination are sufficient to establish each element of expenditure or use. 26 C.F.R. § 1.274–5T(c)(2)(i). The record must be prepared or maintained in such manner that each recording of an element or use is made at or near the time of the expenditure or use. 26 C.F.R. § 1.274–5T(c)(2)(ii). Debtor has adduced no log, proof of expense, or other record. He has not substantiated by "adequate records."

Alternatively, a taxpayer may substantiate by his own written or oral statement containing specific detailed information, and corroborated by other evidence sufficient to establish the expense. 26 C.F.R. § 1.274-5T(c)(3)(i)(A), (B). Debtor's statements are neither specific nor corroborated by other evidence. As such, he has not met his summary judgment burden.

<u>Business Insurance</u>:

On Schedule C, Line 15, Debtor claimed a $12,750 insurance expense. He states in his Declaration that this figure represents the amount claimed on his 1999 Form 1040. He advises his insurance expenses were larger in 2002 and 2004 than in 1999, and that in order to ensure he did not overstate them, he used the 1999 figure.[13] He further states the insurance expense is evidenced by a computer printout, attached as Exhibit 2. The printout reflects a billed cost of $12,750 for Hartford Specialty Policy # 57UUNSR2228. It notes the policy term as 4/2/02-4/2/03. In his Exhibit 1, Debtor states he paid "more" for insurance in 2002 than in 1997. He explains: "[i]n 1997 we had to carry 1 million in coverage. In 2002, 2004 we had to carry 2 mil plus a 3 mil umbrella for 5 mil in coverage."

---

[12](...continued)
purposes." § 274(i). Examples of "qualified nonpersonal use vehicles" are given in 26 C.F.R. § 1.274-5(k)(2)(ii). Again, Debtor has adduced no evidence the F-350 (or Yukon) fit within that definition.

[13] In fact, Debtor did not use the same insurance figure in 2002 ($12,750), as he did in 2004 ($185).

MEMORANDUM OPINION-11

This evidence is sufficient to carry Debtor's burden in opposition to IRS' motion. Exhibit 2 names the issuer, effective date, policy number, and cost. One can reasonably infer from Debtor's statements that the primary policy was a general business policy, which he explains had a $2 million limit, and that he carried an additional $3 million umbrella policy. One can infer Debtor purchased two policies by Exhibit 2's description of the policy as a "package." One issue is whether there is evidence Debtor paid for the policy. He has not produced a cancelled check, binder, or receipt. However Exhibit 2 indicates the policy was "[n]on-renewed," and that the "Tran Eff"[14] date was 6/13/2002, which, when combined with Debtor's statement that he had to carry the insurance, is enough to at least infer Debtor paid for it.

On the other hand, the same evidence is insufficient to carry Debtor's burden on his own motion. While in opposition to IRS' motion, the Court construes the evidence in the light most favorable to Debtor as the non-moving party; in contrast, in support of his own motion, the Court examines the evidence in the light most favorable to IRS as non-moving party. As there is no direct evidence of payment, one could reasonably infer Debtor did not pay. When there are two equally reasonable inferences, summary judgment is inappropriate. Manning, 930 F. Supp. at 1436. Further, the policy description (and to some extent evidence of payment) is based on Debtor's statements,[15] which brings to bear his credibility. There is an issue as to whether Debtor is credible as his sworn statements are rife with inconsistencies, as noted above and below. See also United States' Reply in Support of Motion for Summary Judgment (Doc. #86) at pp. 6-7 (giving examples). It is inappropriate to resolve credibility issues on summary judgment. Anderson, 477 U.S. at 255, 106 S. Ct. at 2513. Thus, the issue as to the allowability of the claimed $12,750 deduction will be held over for an evidentiary hearing.

Taxes and Licenses:

On Schedule C, Line 23, Debtor claimed a $317 expense for "[t]axes and licenses." He stated in his Declaration that for "licenses" he used the amount from his 1999 Form 1040. In Exhibit 1 he stated these

---

[14] The Court interprets "Tran Eff" to mean "transaction effective" or a similar term.

[15] Exhibit 2 simply refers to the policy as a "[p]ackage."

expenses were less than in 1997, as he had 7 vehicles then.  He further stated the 2000 license expense for the F-350 was $317.  Because this is the same amount as claimed in 2002, the Court infers the 2002 expense was for the F-350 license.  Because the F-350 is "listed property," the $317 expense suffers from the same infirmity as the other $7,200 in claimed "car and truck" expenses discussed above.  If the $7,200 was based on a standard mileage rate, Debtor may not take the actual license expense.  See n.9, supra.  Even assuming it wasn't, Debtor has not substantiated the license expenditure through any documentary evidence, like a receipt etc., and has offered nothing to corroborate his statements in his Declaration or Exhibit 1.  He has thus not carried his summary judgment burden.

Workers Compensation Premiums:

On Schedule C, Line 27, Debtor claimed a deduction for $12,513 in "[o]ther expenses," which he identified in Part V of the same Schedule as "[w]orkers compensation [i]nsurance premiums."  Neither his Declaration nor Exhibit 1 specifically references workers compensation premiums.  Further, he has produced no substantiation (i.e., cancelled checks, invoices, policy, receipts, etc).  Even assuming the references to "insurance" in Debtor's Declaration and Exhibit 1 include these premiums, again he has adduced only conclusory statements in support, namely: 1) 2002's costs were more than 1999's and that to be safe he used the 1999 figure; and 2) the 2002 and 2004 insurance expenses were less than in 1997.[16]  Further, Debtor's own evidence appears to contradicts these statements.  His Exhibit 2 indicates workers compensation premiums of $4,785 and $3,684 in 1997 and 1999 respectively, which are nowhere near the $12,513 claimed in 2002.  A declaration contradicted by documentary evidence cannot be used to establish an issue of fact.  Hill v. Spencer Savs. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.), 94 B.R. 817, 822 n.4 (D. N.J. 1989).

Even ignoring Exhibit 2, Debtor appears to be estimating his 2002 expense with the 1997 and/or 1999 returns acting as conservative figures.  In certain circumstances a taxpayer may estimate an expense.  However, before doing so he must establish entitlement to some deduction, Norgaard v. C.I.R., 939 F.2d 874,

---

[16] The Court does not construe Debtor's statements as to carrying "2 mil plus a 3 mil umbrella policy" as relating to workers compensation insurance.

MEMORANDUM OPINION-13

879 (9th Cir. 1991), which includes presenting sufficient evidence to establish a rational basis for making the estimate. Arnold v. C.I.R., T.C. Memo. 2007-168, 2007 WL 1837120, *4 (U.S. Tax Ct. 2007). Here, there is only Debtor's conclusory statement that his actual 2002 expense exceeded those claimed in 1997 and/or 1999. He has not adduced the 1997 or 1999 returns. Further, the Court has no information as to who issued the policy, how many workers it covered, and what were its limits. Debtor's statements are too conclusory to carry his burden.

**2004**:

Car and Truck Expenses:

As he did in 2002, Debtor claimed $7,200 in car and truck expenses on Schedule C, Line 10. Again, he failed to fill in the details required by Part IV of that Schedule. He provided the same evidence for these expenses as he did for 2002's, and for the same reasons, it does not carry his summary judgment burden.

Business Insurance:

On Schedule C, Line 15, Debtor claimed a $185 business insurance expense. He states in his Declaration that he used the 1999 figure, and in Exhibit 1, that he paid more in 2004 than in 1997. He explains in his Declaration that he did not renew his 2002 policy, so in 2004 his insurance expense was only $185. Again, this conclusory evidence is not enough to carry his burden. Unlike the 2002 insurance expenses, he has submitted no evidence as to the type of policy issued, who issued it, or when it was issued.

Office Expense:

On Schedule C, Line 18, Debtor claimed $744 in office expenses. The only possible references in his Declaration and Exhibit 1 to this type of expense are statements regarding his "answering service." On his Declaration, he states he used his 1999 return for this expense, as his 2004 (and 2002)[17] expense was at least as much. However, on Exhibit 1 he stated: "[a]nswer [sic] service was discontinued after 1998." Debtor's statements are thus self-contradictory. Further, even if the Court looked solely to the Declaration, his

---

[17] In fact, Debtor claimed no "office expense" in 2002.

MEMORANDUM OPINION-14

statement is too conclusory to carry his burden. Again, Debtor has not supplied the answering service's name, or when and how he paid for the service.

Repairs and Maintenance:

On Schedule C, Line 21, Debtor claimed an $11,000 repair and maintenance expense. The only specific reference in the record to this type of expense is a handwritten receipt labeled "Ross's Mobile Repair," allegedly for $4,500, dated March 4, 2004, submitted as United States' Exhibit 6, p. 3. The verbiage "19 . . . GMC . . . truck" appears in barely legible print. The description of the services performed is largely illegible.[18] Perhaps what's most interesting is the receipt appears to bear Debtor's signature instead of someone's from Ross's Mobile Repair. There is no other supporting evidence, not even a conclusory sworn statement.[19] The purported receipt cannot carry Debtor's summary judgment burden. See Gorokhovsky v. C.I.R., T.C. Memo 2012-206, 2012 WL 3010569, *4 (U.S. Tax Ct. 2012) (self-generated receipts cannot substantiate an expense). Even were it not self-generated, the receipt is largely illegible and, for this reason alone, cannot sustain Debtor's burden.[20]

Taxes and Licenses:

Like 2002, on Schedule C, Line 23, Debtor claimed a $317 deduction for "[t]axes and licenses." He supports the expense with the same explanation used to support 2002's, and for the same reason, has failed to carry his burden.

// // //

---

[18] As noted above, the Court gave Debtor an opportunity to submit a legible copy, but he declined to do so.

[19] United States' Exhibit 6, p. 1, is a letter from Debtor's bankruptcy counsel identifying the Ross's receipt as a "repair statement."

[20] The only other possible evidence as to the $11,000 is Debtor's statements in Exhibit 1 that "[t]he $1,261 is low," and "[t]he $9,743 was only for the F-350 truck, a tractor and chipper used part time." These statements were made in the paragraph discussing fuel expenses. However, the two amounts total $11,006, which is close to the $11,000 claimed. Even if the Court assumes the two figures relate to repairs and maintenance, the statements are conclusory and uncorroborated.

MEMORANDUM OPINION-15

1         Meals and Entertainment:

2         On Schedule C, Line 24d, Debtor claimed $449 in meals and entertainment, which is 50% of the
3   $899 in expenses he alleges he incurred. Like "listed property," meals and entertainment expenses must be
4   substantiated by adequate records or corroboration of the taxpayer's statement. § 274(d)(1), (2). Debtor has
5   adduced absolutely nothing in support of these expenses. He has failed to carry his burden.

6         Auto Insurance:

7         On Schedule C, Part V, Debtor claimed a $169 auto insurance expense (as part of $11,422 claimed as
8   "other expenses" on Line 27). Like other deductions, his Declaration states he used the amount from his
9   1999 returns as a conservative estimate. This is a conclusory statement containing no details as to the
10  insurance provider, how and when the premium was paid, and what vehicles the policy covered. Further,
11  because automobiles are "listed property," Debtor needs to substantiate the expense either by documentation
12  or other corroborating evidence, both of which are wholly lacking. Debtor's evidence thus does not carry his
13  burden.

14        Postage:

15        On Schedule C, Part V, Debtor listed a $179 postage expense (as part of $11,422 claimed as "other
16  expenses" on Line 27). Debtor has adduced absolutely nothing in support of this expense.

17        Small Tools:

18        On Schedule C, Part V, Debtor listed a $74 expense for small tools. Again, he has adduced
19  absolutely nothing to support this expense.

20        Business Bad Debt:

21        On Schedule C, Part V, Debtor listed an $11,000 business bad debt (as part of the $11,422 claimed as
22  "other expenses" on Line 27). In evidence is a letter from Debtor's bankruptcy counsel advising the debt
23  "was [for] a piece of equipment used in business that was sold but not paid for." United States' Ex. 6, p. 1.
24  Also adduced is a form of ledger for a "Ford Chip Truck; Morbank Chipper," indicating that a $4,000
25  downpayment towards a $15,000 price was paid in April 2002 leaving an $11,000 balance. Ex. 6, p. 4.
26  Handwritten across the ledger are the terms "payoff" and "Bad Debt." Also in evidence is a California DMV

MEMORANDUM OPINION-16

form indicating that in April 2002 Debtor sold a 1976 Ford for $5,000 and a "Morba" (presumably the Morbank Chipper) for $10,000 to the same third party. Ex. 6, p. 5.

A taxpayer may take a deduction for any debt that becomes worthless within the taxable year. § 166(a)(1). "In determining whether a debt is worthless in whole or in part the district director will consider all pertinent evidence, including the value of the collateral, if any, securing the debt and the financial condition of the debtor." 26 C.F.R. § 1.166-2(a).

> Where the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for purposes of the deduction under section 166.

26 C.F.R. § 1.166-2(b); see also Dustin v. C.I.R., 467 F.2d 47, 48 (9th Cir. 1972) (taxpayer has "burden of establishing that . . . [a legal] action, when considered in the light of objective standards, would in all probability have been entirely unsuccessful"). Here Debtor has adduced no evidence of when the purported debt was due, and what, if any, steps he took to enforce collection, or whether taking legal action would have been futile. As such, his submissions do not carry his summary judgment burden.[21]

**2002 Assessment**:

Debtor argues that, even conceding no Schedule C deductions are appropriate, the 2002 Certificate of Assessment is erroneous as it overstates Debtor's self-employment and income tax. The Certificate lists

---

[21] One more argued expense deserves passing reference. Debtor stated in Exhibit 1:

> I rented a house 2 bedroom/2bath, for $1,200/mo with approximately 1,500 sq'. I used a space 8' x 18' in the dining room for my office. I used a space outside 8' x 20' to park the F-350. The Yukon fit in the garage.

Ostensibly, these statements pertain to both the 2002 and 2004 tax years, with the exception that the Yukon reference could only apply to 2004, as Debtor did not buy that vehicle until 2003. In Debtor's Memorandum in Support, he argues in summary fashion that IRS should have given him allowance for these expenses for rented business space. Doc. 82, p. 3. However, he did not claim these expenses on his tax returns, did not list them (or refer to them) on his Concise Statement of Material Facts, and did not compute the dollar amount of any deduction he might be claiming. As such, even if these expenses are before the Court on the current motions, Debtor has not met his summary judgment burden.

MEMORANDUM OPINION-17

$85,776.50 in adjusted gross income. Debtor notes he had $16,497 in income other than from self-employment ($6,429 interest income, $4,000 capital gain income, and $6,068 pension income). He argues that deducting this $16,497 from $85,777 leaves only $69,279 in self-employment income, and thus IRS computed the self-employment tax on an inflated amount.

Debtor however in fact had $78,850 in self-employment income, as his own Schedule C indicates. If no deductions are allowed, all of this income is used in computing self-employment tax. See Schedule SE, Section A, Line 2. Doing the calculation on Schedule SE renders $11,141 in tax, which is what IRS assessed. Debtor's $69,279 calculation is incorrect in several respects. First, it deducts from self-employment/business income, the $5,571 deduction for half the self-employment tax. See Form 1040, Line 29. However, the self-employment tax is computed on Schedule C income <u>before</u> this deduction. Second, his calculation assumes the $4,000 in capital gain income Debtor reported on his 2002 return. However, as noted above, IRS did not base its assessment on this income, and has still not adjusted it upward despite Debtor's return.[22]

Next, Debtor argues IRS did not deduct half the self-employment tax in computing his adjusted gross income, and this error flowed through to his taxable income, which resulted in an over-assessment of income tax. Again Debtor is wrong. As per the "Facts" section above, IRS did in fact give Debtor the deduction. It therefore came to a taxable income of $78,076.50 upon which it correctly assessed $17,738 in income tax,[23] in addition to the $11,141 in self-employment tax. The 2002 assessment is not erroneous (<u>assuming no business deductions</u>), and Debtor has not carried his summary judgment burden to rebut the presumed validity of its calculations.

// // //

// // //

---

[22] Thus $78,850 (Schedule C net income allowing for no deductions) minus $5,571 (the self-employment tax deduction (50% of the tax as rounded)) minus $4,000 (declared gain income not counted by IRS)=$69,279 (Debtor's erroneous figure).

[23] <u>See</u> 2002 Tax Table.

MEMORANDUM OPINION-18

**2004 Assessment**:

As with the 2002 assessment, Debtor argues, again assuming no allowable Schedule C deductions, that the 2004 self-employment tax was over-assessed because it was based on his interest and pension income <u>in addition to</u> his business income. Again however, as noted in the "Facts" section, the $4,383 in self-employment tax was correctly computed solely on Debtor's $31,017 business income.

**Conclusion**:

Under FRBP 56(g), even if the court does not grant all the relief requested in a motion for summary judgment, it may enter an order stating certain material facts are not genuinely in dispute and thus established in the case. To that end, for <u>2004</u>, all the amounts set out in IRS' proof of claim #2-3 for taxes ($8,286.00), and interest thereon to the petition date ($3,881.42), are established and allowed.[24]

For <u>2002</u>, in computing Debtor's taxable income and hence his income tax, the following income is established: 1) $6,429 (taxable interest); 2) $6,068 (taxable pension income); and 3) $78,850 (gross business income). The following deductions from total and adjusted gross income are also established and allowed: 1) $4,700 (standard deduction); and 2) $3,000 (personal exemption). It is also established that Debtor is entitled to no Schedule C deductions, except that the allowability of the claimed $12,750 insurance deduction will be held over for an evidentiary hearing. When that matter is resolved, the total amount of 2002 taxes (including self-employment tax), interest, and penalties may be computed.

This Opinion constitutes the Court's findings of fact and conclusions of law under FRBP 7052. Counsel for IRS shall submit an order consistent therewith within 10 days of this Opinion's entry.

*Thomas M Renn*

THOMAS M. RENN
Bankruptcy Judge

---

[24] Proof of Claim #2-3 lumps the 2002 and 2004 penalties (and interest thereon) together. As noted below, the amount of the 2002 taxes, interest, and penalties will be computed after an evidentiary hearing, at which time the 2004 penalties and interest thereon shall also be computed.

MEMORANDUM OPINION-19